UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAINE DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 1:14-cv-00391-JDL ) |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) ) ) ) ) |
| Defendants. | ) |

**ORDER ON CROSS-MOTIONS FOR JUDGMENT**

Riverview Psychiatric Center ("Riverview") is a psychiatric hospital operated by the Maine Department of Health and Human Services ("Maine DHHS"). ECF No. 1 at 4. Riverview participated in the federal Medicare program until the Centers for Medicare and Medicaid Services ("CMS") terminated its provider agreement effective September 2, 2013. *Id*. at 7. Riverview and Maine DHHS (collectively, the "State") brought suit against the United States Department of Health and Human Services ("DHHS"), Secretary of Health and Human Services Sylvia Burwell, CMS, and the administrator of CMS, Marilyn Tavenner (collectively, the "Federal Government"), seeking review of the termination and asking for reinstatement of Riverview's provider agreement. *See id*. at 15-18. The parties have cross-motioned for judgment on the administrative record. ECF No. 13; ECF No. 14. In its motion, the Federal Government contends that the complaint should be dismissed because the court lacks

subject matter jurisdiction over the case. ECF No. 14 at 14.[1] After careful consideration, I agree with the Federal Government's position and dismiss the complaint for want of jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Riverview is a 92-bed psychiatric hospital in Augusta, operated by Maine DHHS. ECF No. 1 at 4. In March 2013, Maine DHHS conducted a survey at the hospital which identified a number of "significant deficiencies" related to Riverview's compliance with Medicare's conditions of participation. AR at 406. CMS undertook its own survey in May. *Id*. Following the survey, CMS concluded that the "deficiencies have been determined to be of such a serious nature as to substantially limit the psychiatric hospital's capacity to provide adequate care." AR at 407. In a letter to Riverview dated June 4, 2013, CMS notified Riverview that it had "determined to terminate the Medicare provider agreement between [Riverview] and the Secretary [of Health and Human Services], effective September 2, 2013." *Id*. CMS informed Riverview in this same letter that it could "take steps to avert termination" by submitting an acceptable plan of correction within 10 days. *Id*.

Riverview did not seek administrative review of the June 4 decision before an administrative law judge ("ALJ"), as authorized by regulation. *See* 42 C.F.R. § 498.5(b) (2015) ("Any provider dissatisfied with an initial determination to terminate its provider agreement is entitled to a hearing before an ALJ."). Riverview did submit

---

[1] The Federal Government asks both for a dismissal for lack of subject matter jurisdiction and for judgment based on the administrative record. ECF No. 14 at 14, 25. I treat its motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), and, in the alternative, for judgment on the record.

two plans of correction, which were rejected by CMS in July 2013.  AR at 501-504.  The second of these rejection letters, dated July 29, reminded Riverview that "failure to provide an acceptable plan of correction will not delay the effective date of termination of September 2, 2013."  AR at 504.

On August 14, 2013, CMS sent Riverview a letter which noted the rejection of the two plans of correction and declared that "[b]ecause Riverview . . . has failed to submit acceptable plans of correction, CMS will terminate the Medicare provider agreement between Riverview . . . and the Secretary, effective September 2, 2013."  AR at 506.  The letter notified Riverview of its right to seek review of the termination before an administrative law judge.  *Id.*  Finally, the letter stated that "[i]f Riverview . . . submits acceptable plans of correction immediately . . . CMS . . . may conduct a revisit survey to determine whether compliance has been achieved.  This should not be interpreted as an extension to the termination date of September 2, 2013."  AR at 507.

Riverview submitted a third plan of correction.  AR at 515.  By a letter dated August 29, CMS informed Riverview that it found this third plan of correction acceptable.  *Id.*  CMS noted that it would conduct a survey to determine compliance with the relevant conditions of participation, and stated that "[f]ailure to correct . . . deficiencies will result in termination of the Medicare provider agreement, as stated in our letter of June 4, 2013."  *Id.*

CMS conducted its survey on September 17, 2013.  AR at 516.  In a letter dated September 27, 2013, CMS notified Riverview that it "was involuntarily terminated

3

effective September 2, 2013[.]" *Id*. The letter noted that CMS had reviewed whether Riverview had completed the corrective actions promised in its plan of correction. *Id*. After evaluating these findings, CMS concluded that it would "not re-open and revise its initial determination to terminate [Riverview's] provider agreement." *Id*.

Riverview filed an administrative appeal on October 11, 2013, requesting a hearing before an administrative law judge. AR at 33. On January 3, 2014, the ALJ dismissed the appeal, finding that Riverview had "no right to a hearing to challenge the declination by [CMS] to reopen its determination to terminate [Riverview's] participation in the Medicare program." AR at 1. The ALJ reasoned that the governing regulations, 42 C.F.R. § 498 *et seq.*, provided only for an appeal from the "initial determination" to remove Riverview from Medicare. AR at 3. According to the ALJ, Riverview's failure to timely challenge the June 4 termination decision resulted in a waiver of its appeal rights, and it subsequently "had no right to challenge CMS's discretionary act not to reopen and revise those findings." AR at 4. On August 4, 2014, the three-member Departmental Appeals Board ("DAB") upheld the ALJ's dismissal, concluding "the ALJ correctly concluded that CMS's September 27, 2013, decision not to reopen or revise its initial determination was not an initial determination and, therefore, conveyed no appeal rights." AR at 13. The State filed this suit on October 3, 2014, seeking review of the termination. *See* ECF No. 1.

## II. DISCUSSION

The Federal Government asserts that the court lacks jurisdiction to hear the State's claims, and asks for dismissal of the action pursuant to Federal Rule of Civil

Procedure 12(b)(1). ECF No. 14 at 14. When a defendant alleges that subject matter jurisdiction is lacking, it is the plaintiff's burden to prove that jurisdiction exists. *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996). Here, the State argues that both the Medicare Act,[2] 42 U.S.C.A. § 1395 *et seq.* (2015), and the Administrative Procedure Act, 5 U.S.C.A. § 701 *et seq.* (2015), provide jurisdiction. ECF No. 13 at 13. I consider each Act in turn.

A.  The Medicare Act

    1. Statutory and Regulatory Background

Some initial background is necessary regarding the complex statutory and regulatory framework which governs Riverview's participation in Medicare. The Medicare program entitles aged and disabled Americans to certain healthcare insurance benefits. *See* 42 U.S.C.A. § 426 (2015). Medicare makes payments on behalf of these individuals to the healthcare institutions that provide them with qualifying services. *See* 42 U.S.C.A §§ 1395f, 1395g (2015). In order to receive these payments, a provider of services must enter into an agreement with the Secretary of Health and Human Services. *See* 42 U.S.C.A. § 1395cc(a)(1) (2015). CMS, a division of DHHS, is empowered to terminate a provider agreement if the provider of services fails to comply with certain conditions of participation in the program. *See* 42 U.S.C.A. § 1395cc(b)(2) (2015); 42 C.F.R. § 489.53(a) (2015).

---

[2] Specifically, the State asserts jurisdiction under 42 U.S.C.A. § 405(g) (2015), a provision of the Social Security Act which is incorporated into the Medicare Act at 42 U.S.C.A. § 1395cc(h)(1)(A) (2015). *See* ECF No. 13 at 13. For the sake of simplicity, I refer to § 405(g) as being part of the Medicare Act.

The Medicare Act affords a right of administrative review before an administrative law judge in the event that a provider agreement is terminated. 42 U.S.C.A. § 1395cc(h)(1)(A) (2015). The regulations governing this process are found at 42 C.F.R. § 498 *et seq*. The regulations identify 18 specific actions by CMS that are "initial determinations," *see* 42 C.F.R. § 498.3(b) (2015), including the "termination of a provider agreement in accordance with § 489.53 of this chapter," 42 C.F.R. § 498.3(b)(8), which is the subject of CMS' June 4, 2013, letter to Riverview. "Any provider dissatisfied with an initial determination to terminate its provider agreement is entitled to a hearing before an ALJ." 42 C.F.R. § 498.5(b). A provider must request this review within sixty days of receiving notice of the decision to terminate its provider agreement. 42 U.S.C.A. §§ 405(b)(1), 1395cc(h)(1)(A) (2015); 42 C.F.R. § 498.40(a)(2) (2015).[3] Once CMS has made an initial determination, that decision is binding unless it is "[r]econsidered," "[r]eversed or modified by a hearing decision," or "[r]evised." 42 C.F.R. § 498.20(b) (2015).

A provider seeking reconsideration of an "initial determination" must file a formal request for reconsideration within 60 days of the receipt of notice of an initial determination, stating the issues or findings of fact with which the provider disagrees. 42 C.F.R. § 498.22(b)(3), (c) (2015). CMS then receives evidence regarding the matter and either affirms or modifies its original determination. 42 C.F.R. §§ 498.24(a), (c) (2015). CMS may also reopen and revise an initial or reconsidered

---

[3] The regulations also identify a number of administrative actions that are deemed not to be "initial determinations," and are therefore not subject to review. 42 C.F.R. § 498.3(d). This list is illustrative and not exhaustive. *Id*.

determination on its own initiative. 42 C.F.R. §§ 498.30, 498.32 (2015). In the event that CMS revises a determination, the agency must provide the affected party notice of the revision, "stat[ing] the basis or reason for the revised determination." 42 C.F.R. § 498.32(a)(2).

The Medicare Act provides for judicial review of "any final decision of the [Secretary of Health and Human Services] made after a hearing[.]" 42 U.S.C.A. § 405(g) (2015); 42 U.S.C.A. § 1395cc(h)(1)(A). The Act specifies that this mechanism is the only means by which judicial review is available: "No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency *except as herein provided.*" 42 U.S.C. § 405(h) (emphasis added).

## 2. Whether the State is Entitled to an Administrative Hearing and Judicial Review of the September 27 Decision that it Failed to Comply with its Accepted Plan of Correction

### a. The Issue Presented

The State does not challenge CMS' June 4, 2013 decision to terminate Riverview's provider agreement effective September 2. *See* ECF No. 16 at 2, 5-6. As the ALJ found, the State "allowed the initial determination to go into effect without challenging it and, on September 2, 2013, CMS terminated the provider agreement." AR at 3. Instead, the State seeks review of the September 27, 2013 decision, ECF No. 13 at 2-3, in which CMS "concluded that it [would] not re-open and revise its initial determination to terminate Riverview Psychiatric Center's Medicare provider agreement," AR at 516. The State asserts that the September 27 determination "was not one declining to 'reopen' an earlier determination[, but instead] was a new

determination based on alleged deficiencies identified during the September 17 survey." ECF No. 13 at 14. Accordingly, the State argues that the September 27 decision was, in effect, an "initial determination" to terminate its provider agreement for which it is entitled to administrative and judicial review.

The Federal Government responds that administrative and judicial review of the September 27 decision is unavailable because a decision not to reopen and revise a termination decision rests exclusively within the discretion of the Secretary and is not subject to further administrative or judicial review. ECF No. 14 at 1-2. In the Federal Government's view, the State's sole opportunity to obtain administrative and judicial review of the administrative process that began with the March 2013 survey and concluded with the September 27, 2013 letter was to have filed a notice of appeal within sixty days of the June 4 notice of termination, which the State failed to do. *Id.* at 6-7.

As framed by the parties' arguments, this case presents what appears to be an issue of first impression: namely, whether CMS's administrative determination that a provider has failed to properly implement a plan of correction is subject to administrative and judicial review under the Medicare Act.

### b. Legal Analysis

"Federal Courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Accordingly, the District Court has jurisdiction to consider the State's claims only to the extent provided by the Medicare Act or some other source of federal law.

A grant of jurisdiction must be construed according to established principles of sovereign immunity. In the absence of an authorizing statute or other waiver, "sovereign immunity shields the Federal Government and its agencies from suit." *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Waivers of sovereign immunity "must be definitely and unequivocally expressed," *United States v. Horn*, 29 F.3d 754, 762 (1st Cir. 1994), and when a waiver is established, it must be strictly construed in support of the government, *Blue Fox, Inc.*, 525 U.S. at 261.

Here, by the State's own characterization, the September 27 letter from CMS was a "determination that Riverview failed to implement the [plan of correction] properly." ECF No. 16 at 3; *see also* ECF No. 13 at 13. Nowhere do the Medicare Act or its implementing regulations support a right to challenge a decision that a plan of correction was not properly implemented.[4] *See* 42 U.S.C.A. § 1395cc(h)(1)(A); 42

---

[4] The Medicare Act provides for review of "a determination by the Secretary that it is not a provider of services or . . . a determination described in subsection (b)(2) of this section[.]" 42 U.S.C.A. § 1395cc(h)(1)(A). That subsection describes four types of provider agreement termination decisions: (1) termination "after the Secretary has determined that the provider fails to comply substantially with the provisions of the agreement, with the provisions of this subchapter and regulations thereunder, or with a corrective action required under section 1395ww(f)(2)(B) of this title"; (2) termination "after the Secretary has determined that the provider fails substantially to meet the applicable provisions of section 1395x of this title"; (3) termination "after the Secretary has excluded the provider from participation in a program under this subchapter pursuant to section 1320a-7 of this title or section 1320a-7a of this title"; and (4) termination "after the Secretary has ascertained that the provider has been convicted of a felony under Federal or State law for an offense which the Secretary determines is detrimental to the best interests of the program or program beneficiaries." 42 U.S.C. § 1395cc(b)(2). These four types of termination decisions, along with a determination that a given institution is not a provider of services, are the only actions the Medicare Act provides review for.

C.F.R. § 498.3(b).  While the regulations expressly authorize "plans of correction" and "revisit surveys" as tools for addressing deficiencies found by CMS, *see, e.g.*, 42 C.F.R. §§ 488.28, 488.30(a), neither is listed as an "initial determination" subject to administrative and judicial review.  An approved plan of correction followed by a successful revisit survey might very well lead CMS to exercise its authority to reopen and revise its initial decision.  *See* 42 C.F.R. § 498.32.  There is nothing stated in the regulations, however, that requires CMS to do so or subjects its decision not to reopen to administrative and judicial review.  As cabined by the relevant regulatory framework, a decision not to reopen is entirely discretionary.  Accordingly, for purposes of determining the court's subject matter jurisdiction in this case, the Medicare Act and its regulations do not unequivocally express that the Federal Government has consented to be sued for its decision that the State failed to properly implement its plan of correction.

The State seeks to avoid the preceding conclusion by contending that the September 27 letter may still be viewed as an "initial determination" reviewable under 42 C.F.R. § 498.3(b) because its practical effect was to terminate Riverview's provider agreement.  ECF No. 13 at 18.  This argument is unavailing for two reasons.  First, it is undisputed in this case that the termination of Riverview's provider agreement took effect on September 2, more than three weeks prior to the September 27 letter.  *See* AR at 516.  Second, the September 27 letter may have *related* to the

---

The Medicare Act's implementing regulations provide for review of 18 different "initial determinations." 42 C.F.R. § 498.3(b). The only listed determination which either party has identified as relevant to this dispute is 42 C.F.R. § 498.3(b)(8), "[t]he termination of a provider agreement in accordance with § 489.53 of this chapter[.]"

termination of Riverview's provider agreement, but the correspondence from CMS makes clear that the decision to terminate Riverview's provider agreement effective September 2 was made on June 4, 2013. *See* AR at 407, 505-06, 515. The State's effort to characterize the September 27 letter as operating as an independent termination of Riverview's provider agreement that revived the State's right to judicial review stretches the facts of this case, and the relevant statutory and regulatory language, beyond their limits. *See United States v. Horn*, 29 F.3d 754, 762 (1st Cir. 1994) (holding that a "waiver of sovereign immunity . . . must not be enlarged beyond such boundaries as its language plainly requires.").

The State also contends that the September 27 decision was an initial determination because it related principally to deficiencies identified in the September 17 survey, which were largely different than the deficiencies identified in March and May of 2013 that were the subject of the June 4 letter. ECF No. 13 at 14-15. Thus, the State argues, the September 27 decision was an "initial determination" because it was the first time CMS had based a decision on the September 17 survey and the particular deficiencies it discovered. *Id*. This argument is semantic only. That a particular decision was made for the first time does not make it an "initial determination" in the manner that term is used in the Code of Federal Regulations. *See* 42 C.F.R. § 498.3(b) ("CMS makes initial determinations with respect to the following matters:"). Were it otherwise, an appeal could be taken from discretionary administrative decisions that are not otherwise reviewable, based on the argument that the decision was the "initial" time that decision had been made.

11

At the hearing, the State also argued that the August 29 letter reflecting acceptance of its plan of correction constituted a "rescission" of the June 4 termination, so that the September 27 letter is properly treated as a new, reviewable determination that Riverview's provider agreement would be terminated. The State's rescission argument finds no support in the regulations or in the body of the August 29 letter itself. The regulations provide for "revision" and "reconsideration" of decisions to terminate provider agreements, *see* 42 C.F.R. §§ 498.22, 498.32, but nowhere recognize the possibility of "rescission." Even if they did, the August 29 letter did not indicate or suggest that a "rescission" or "revision" of the earlier termination decision was intended or had occurred. *See* AR at 515; 42 C.F.R. § 498.32 (noting that CMS will "give[ ] the affected party notice of reopening and of any revision" and "state[ ] the basis or reason for the revised determination.").

Finally, the State argues that it is entitled to review of the September 27 decision based upon the references to appeal rights that appeared in the August 29 and September 27 letters from CMS. ECF No. 13 at 13-14. According to the State, these references are incompatible with the Federal Government's position that Riverview's opportunity to appeal the June 4 termination decision expired on August 5. *Id*. at 14. The Federal Government offers an alternative explanation. It argues that because the regulations referenced by CMS in its August 14 letter include a provision allowing extension of the 60-day filing period for good cause, *see* 42 C.F.R. § 498.40(c); AR at 506, the reference to appellate rights in the August 29 and September 27 letters

12

served to inform the State of its right to request an extension of the time in which to appeal the June 4 notice of termination.

Regardless of the relative strength of these explanations, the regulations do not vest CMS officials with the authority to grant providers appeal rights any greater or different than those authorized by the Medicare Act and the regulations. The possibly errant reference to appeal rights in the August 29 and September 27 letters did not convert the September 27 determination into an appealable final decision. And, as previously discussed, the August 29 letter specifically referenced the "August 14, 2013 notice regarding appeal rights for termination effective September 2, 2013," a reference that contradicts the notion that it was intended to confer appeal rights regarding future events. AR at 515.

I conclude that the State has not demonstrated that the Medicare Act or any of its implementing regulations affords it a right to challenge at a hearing the September 27 decision by CMS that the State had not properly implemented its plan of correction. Because only those decisions that carry entitlement to hearings are subject to judicial review, *see* 42 U.S.C.A. §§ 405(g), 1395cc(h)(1)(A), the State has not met its burden of showing that the Medicare Act provides this court subject matter jurisdiction over its claim. *See Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456-57 (1999) (concluding that a refusal to reopen a reimbursement determination is not a final determination subject to further administrative and judicial review); *Califano v. Sanders*, 430 U.S. 99, 107-108 (1977) (concluding that a declination to reopen a prior final decision regarding Social Security disability

benefits was not a final decision subject to further administrative and judicial review).

## B.   The Administrative Procedure Act ("APA")

The State further contends that review of the September 27 determination is available under the Administrative Procedure Act. ECF No. 13 at 18. Generally, the APA provides for judicial review of certain agency actions. *See* 5 U.S.C.A. § 702 (2015). However, the APA does not apply when "statutes preclude judicial review." 5 U.S.C.A. § 701(a)(1) (2015). In this case, the Medicare Act is such a statute.

Section 405(h) of the Social Security Act establishes that "[n]o findings of fact or decision . . . shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C.A. § 405(h). This provision is incorporated into the Medicare Act, 42 U.S.C.A. § 1395ii (2015), and its language makes the judicial review procedures under that statute the exclusive mechanism for litigating claims that arise under the Medicare Act. This forecloses APA review. *See Jordan Hosp., Inc. v. Shalala*, 276 F.3d 72, 77 n.4 (1st Cir. 2002); *ELR Care Maine, LLC v. Progressive Mgmt. Sys. LLC*, 2014 WL 5599670, at *2 (D. Me. Nov. 4, 2014) ("The Court's authority to consider a claim involving the Medicare Act is limited to the judicial review of agency action prescribed by the Act."). In addition, the judicial review provision of the APA "is not an independent grant of subject-matter jurisdiction." *Your Home Visiting Nurse Servs.*, 525 U.S. at 457-58. Accordingly, the APA does not provide subject matter jurisdiction over the State's claims. *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 25 (2000) (concluding that §

405(g) of the Social Security Act was the exclusive basis to challenge Medicare-related regulations); *Califano v. Sanders*, 430 U.S. 99, 106 (1977).

## III. CONCLUSION

At the hearing, the State argued that as a matter of fairness and equity, it should not be denied the right to challenge CMS's September 27 decision simply because it chose not to contest the June 4 decision and to instead direct its resources toward correcting the problems the June 4 decision identified. There is some merit to this argument. CMS's June 4 letter invited the State to engage in a corrective process and the State, acting in apparent good faith, accepted that invitation. It can be argued that the ensuing process penalized the State for having directed its energy and resources towards achieving regulatory compliance, rather than contesting the alleged deficiencies. Nevertheless, for the following reasons, I conclude that the State is not entitled to equitable relief and has not been treated unfairly.

First and foremost, neither the Medicare Act nor its implementing regulations grant courts equitable authority to bypass the requirements of the Act and its regulations. The State has cited no authority to the contrary, and the State did not plead equitable grounds as a basis for relief in its complaint.

In addition, read in their entirety, the Act's regulations offer no support for the proposition that a provider can avoid the effects of an unchallenged termination decision by engaging in a corrective process with CMS. Here, the State had ample opportunity to challenge the June 4 decision but failed to do so. The consequences

15

flowing from that failure may be harsh, but they are not, in the end, surprising given the regulatory scheme set out in the regulations.[5]

The State's motion for judgment on the administrative record is hereby **DENIED**. The Federal Government's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.

    **SO ORDERED.**

**/s/ Jon D. Levy**
**U.S. District Judge**

**Dated this 13th day of August, 2015.**

---

[5] As previously discussed, the regulations permit a party to file a request for hearing after the expiration of the sixty-day appeal period for "good cause." *See* 42 C.F.R. § 498.40(c). Separately, the State has noted that in two instances, administrative law judges have treated a provider's alleged compliance with an accepted plan of correction as a reviewable issue where the provider requested a hearing in response to a termination decision. ECF No. 13 at 15. The parties' briefs and the record do not explain why, in light on these authorities, the State has not requested a hearing after the expiration of the 60-day appeal period based on the events associated with its approved plan of correction. Because the question of what constitutes "good cause" for purposes of a late hearing request under § 498.40(c) is not presented for decision in this case, I do not resolve whether the State had or may still have an avenue to obtain administrative review of CMS's decision of June 4, 2013, and, by extension, the decision of September 27, 2013.